# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-11-00234-CR

**Rebecca Hewett, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
### NO. CR-09-0817, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rebecca Hewett of intentionally or knowingly causing bodily injury to her son and sentenced her to ten years' imprisonment. On appeal, Hewett argues that the evidence is insufficient to support the conviction because the child's injury was a result of reasonable discipline and because there was no evidence that she intended the resulting injury. She also argues that the jury charge was erroneous. We affirm the judgment of conviction.

### Factual Summary

In early May 2008, Hewett spanked R.L., her four-year-old son, with a rubber flip-flop shoe.[1] Although he gave conflicting testimony and said that he had not been entirely honest in

---

[1] The facts are known to the parties, and we therefore will not recite them in great detail in this opinion. *See* Tex. R. App. P. 47.1 (appellate court opinions should be as "brief as practicable"), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

his statement, Jamie Hewett, Hewett's husband and R.L.'s stepfather, told the police that he was alarmed enough by the "bad welps" inflicted on R.L. that he arranged for R.L. and his younger brother to stay with his mother or sister "until I could figure something out." Jamie also told the police that in the past, Hewett had "slapped [R.L.] to the floor with her open hand" and that he told her "to never do that again." Jamie's mother called Child Protective Services and reported that Hewett had abused the child. The State introduced into evidence photographs taken shortly after the spanking that show "deep bruising," red marks or welts, and abrasions on R.L.'s back, buttocks, and upper legs, as well as a "raw area on his buttocks that looked like it could be weeping or a little bit damp." R.L.'s father testified that Jamie's mother sent him the same photographs shortly after the spanking and that he then sought and obtained custody of R.L.

The investigating detective testified that based on her study of the photographs,[2] R.L.'s injuries were the result of "repeated blows with significant force," not reasonable discipline. She said, "In my opinion, I believe that it took repeated blows to inflict the deep bruising. I've seen some redness, some purplish bruises, but to make this deep of an imprint, I think it took repeated blows. And to me that's—she knew what she was doing. She absolutely knew that this was going to hurt and hurt badly." Hewett testified that she spanked R.L. three times in an effort to discipline him and that his bottom was red immediately after the spanking but faded throughout the day. She denied that there were any marks on his back later in the day and testified that R.L. was not the child in the photographs.

---

[2] The detective did not receive the report of the May 2008 spanking until sometime in 2009. She said that kind of reporting delay is unusual but not unheard of, and explained that R.L. had moved to Mississippi shortly after the spanking occurred and was not brought back to Texas so that he could be interviewed until more than a year later.

**Sufficiency of the Evidence**

In her first two points of error, Hewett contends that the spanking "did not cross the line into unreasonable discipline" and that a rational jury could not have determined that the force she used was unreasonable.[3]  She notes that R.L. did not require medical intervention and that the State did not put on medical evidence about the degree of his injuries and asserts that the State did not prove who took the photographs or when they were taken.  We disagree.

Jamie Hewett told the police that he sent the children to stay with his family because he needed to "figure something out" after Hewett spanked R.L. and left "bad welps" on his back and buttocks.  R.L. testified that his mother spanked him with a rubber flip-flop and that it hurt.  He also testified that she later denied it and asked who had told him to tell lies and that he was upset by that because he knew she was not telling the truth.  R.L.'s father testified that Jamie's mother sent him the photographs of R.L.'s injuries shortly after the spanking, the investigating detective determined that the photographs were taken one day after the spanking, and the photographs themselves carry a date stamp reading "05/04/2008."  The photographs show significant discoloration and bruising on R.L.'s back, buttocks, and upper legs, and the detective described a "weeping" area and abrasions.

Hewett's justification for the spanking was that she was using the force she believed was reasonably necessary to discipline R.L.  However, the State was required not to refute that justification but only to prove the elements of the offense beyond a reasonable doubt.  *See Goulart v. State*, 26 S.W.3d 5, 10 (Tex. App.—Waco 2000, pet. ref'd).  The jury could have concluded that

---

[3]  The penal code allows a parent to use force against a child "to the degree the actor reasonably believes the force is necessary to discipline the child."  Tex. Penal Code § 9.61(a)(2), *see also id.* § 1.07(a)(42) (defining "reasonable belief").

3

the photographs were taken shortly after the spanking and depicted the injuries suffered by R.L. as a result of Hewett's actions. The jury was not obliged to believe Hewett's testimony that she intended only to discipline R.L. and did not intend to inflict serious bruising or other injury. Instead, the jury could have determined (1) that the injuries R.L. suffered were the result of greater force than a reasonable person would have believed necessary to reasonably discipline him, *see* Tex. Penal Code §§ 1.07(a)(42) (defining "reasonable belief"), 9.61(a)(2) (explaining when parent is justified using force against child), 22.04(a) (elements of injury to a child), and (2) that Hewett knew the level of force she was using to spank R.L. would cause or was likely to cause him bodily injury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* Tex. Penal Code § 6.03 (person acts intentionally if it is her "conscious objective or desire" to cause result; person acts knowingly if, based on circumstances, she is aware that conduct is likely to cause result). We overrule Hewett's first two points of error.

## Jury Charge

The penal code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code § 1.07(a)(42). In her third point of error, Hewett argues that the charge did not tell the jury that it must view the situation from Hewett's circumstances, and that the jury was therefore given the wrong standard to assess the reasonableness of her actions.[4] We disagree.

---

[4] Hewett did not object to the charge, and therefore would only be entitled to reversal if the charge was erroneous to a degree that caused her "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

The jury charge explained that a parent has the right to use reasonable discipline; that use of force against a child is justified if the parent reasonably believes the force is necessary to discipline the child; that the use of force is not justified by a parent's subjective belief but only when "a reasonable person would have believed the force is necessary, which is an objective standard"; and that "'[r]easonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Although those instructions and definitions were not combined into one paragraph, they were set out in a list format in the first two sections of the charge, not buried deep in the charge or surrounded by confusing or incorrect language. There was no error in the charge. We overrule Hewett's third point of error.

## Conclusion

Having overruled Hewett's three points of error, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin and Field

Affirmed

Filed: August 15, 2013

Do Not Publish

5